UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY HUNT, | ) | CASE NO. 1:17CV1263 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| MONRO MUFFLER BRAKE, INC., | ) | MEMORANDUM AND OPINION |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court upon a Motion for Summary Judgment filed by Defendant, Monro Muffler Brake, Inc. ("Monro"). (ECF #57). Plaintiff, Jeffrey Hunt ("Mr. Hunt") timely filed a Brief in Opposition, (ECF #62), and Monro filed a Reply (ECF #63).[1] This matter is fully briefed and ripe for review. For the reasons set forth herein, Monro's Motion for Summary Judgment (ECF #57) is GRANTED.

I. Factual History[2]

Mr. Hunt was hired by Monro on August 31, 2016 to work as an Automotive Technician in its Service Store in Medina, Ohio. Monro Service Stores offer general automobile maintenance, repair, and brake services, and operates approximately 539 stores in 15 states.

---

[1] Mr. Hunt filed a "Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment Instanter" (ECF #65-1) which will not be considered herein, as it does not comply with Rule 7.1 of the Local Civil Rules for the Northern District of Ohio.

[2] Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through the submitted affidavits or other evidence will be addressed in the body of the opinion, and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

1

(ECF #62, p.7). As an Automotive Technician, Mr. Hunt was responsible for diagnosing and repairing vehicles, was required to operate lifts, welders and brake lathes, and regularly lift up to 50 pounds. (See ECF #57-2, Hunt Deposition at Ex. M)(hereafter referred to as "Hunt Dep."). Mr. Hunt has indicated that at the time he was hired, he received the Employee Handbook and a copy of the overtime policy, both of which he reviewed and understood. (Hunt Dep. pp. 53-54; Exs. O and P).

Monro technicians also earned a commission/incentive each time an invoice was generated for a customer in Monro's Point of Sale ("POS") computer system and the technician performed work for that customer. (ECF #57-1, p.3) Monro set Mr. Hunt's commission rate at 11.5% of regular sales and 4% of tire sales. Mr. Hunt was paid a guaranteed hourly rate of $9.00 per hour, and he was eligible to be paid time and one half for all hours worked over forty per week. However, Monro's overtime policy prohibits an employee from working overtime without the express authorization of his Store Manager.

In order to record employee hours, Monro's policy mandates that employees accurately enter all hours worked into the POS system at the beginning and end of each shift. The Employee Handbook indicates, in part, that employees who engage in unauthorized work or falsely record their time will be disciplined and could be terminated. (See Hunt Dep. Ex O). Monro's Vice President of Human Resources, Ed Mullen ("Mr. Mullen"), provides that Mr. Hunt was disciplined on several occasions for violating this policy by "inflating his time entries" into the POS (i.e., failing to clock out during lunch or personal time, clocking in too early, etc). (ECF #57-3, Mullen Declaration at ¶ 18)(hereafter "Mullen Dec."). For example, in January of 2017, Assistant Manager David Turner completed an "Employee Warning Report" regarding Mr. Hunt's inflated time entries, and Mr. Hunt testified that Dave Turner directed him to stop

2

clocking in early. (Hunt Dep. Ex X; p. 140). Another Assistant Manager, Alex Brandt, ("ASM Brandt") also reduced Mr. Hunt's inflated time entries, and Mr. Hunt testified that those reductions accurately depict the time that he worked. (Hunt Dep. p. 113; Mullen Dec. at ¶ 13). Mr. Hunt also testified that Market Manager Frank Fazio ("Manager Fazio") warned him after Mr. Hunt "clocked in like ten minute early a couple of days." (Hunt Dep. p. 139).

On January 4, 2017, Mr. Hunt called Monro's Direct Access Whistleblower Hotline to complain that "me and my fellow technicians are being shorted our hours that we have worked, [and] overtime." (See ECF #57-1, p. 7). Mr. Hunt was informed by Monro that they would investigate the complaint.[3]

Mr. Hunt's complaint was still being investigated by Monro on April 3, 2017, when Mr. Hunt was injured after an air compressor slipped and lacerated the palm of his hand. (Hunt Dep. p. 19). Mr. Hunt filed a worker's compensation claim for the injury and was advised he could return to work with light duty restrictions from May 1, 2017 until October 27, 2017. However, "Monro does not maintain light duty positions at the Medina Services Store, nor has Monro provided light duty to any employee who was assigned to that facility." (Mullen Dec. ¶20).

In May or June of 2017, a random audit of store purchases found that Mr. Hunt purchased four specialty tires on December 1, 2016, and signed for their receipt on December 7, 2016. (See ECF #57-1, pp. 9-10). However, these tires were not attached to a customer invoice, could not be located in the Store's inventory and there was no record that the tires had been installed on a customer vehicle. Furthermore, the tires were incorrectly purchased through a "supply purchase order," rather than an "equipment purchase order." (Mullen Dec. ¶24). When Manager Fazio

---

[3] In mid-January of 2017, Mr. Hunt also filed a complaint with the U.S. Department of Labor, Wage and Hour Division. (ECF #50-4).

3

asked Mr. Hunt about the tires on June 15, 2017, Mr. Hunt admitted he signed for the delivery of the tires and installed them onto a car, but failed to "credibly account for the [whereabouts of the] missing tires." (Hunt Dep. Ex. S, Mullen Aff., ¶ 25). According to corporate policy, Monro reported the tires as missing to the Medina Police Department on July 3, 2017. Manager Fazio told Mr. Hunt not to return to the Medina Service Store until the investigation into the missing tires was complete. (ECF #57-1, p. 10).[4]

During a subsequent audit of outbuy purchases, Monro found that ASM Brandt also ordered specialty tires in December 2016 that were not tied to a customer invoice or able to be located. (See ECF #55-1, Fazio Deposition, p. 199). Monro filed a police report for these missing tires as well. (*Id.* at p. 201).[5] Some time after this was discovered, ASM Brandt was terminated from his employment at Monro. (Fazio Dep. p. 138).

Monro terminated Mr. Hunt's employment on November 15, 2017. In the termination letter, Monro informed Mr. Hunt that "[a]ll employees in your region, who purchase and receive equipment, merchandise or products that cannot be accounted for, are immediately separated from their employment." (ECF #57-1, p. 11, Hunt Dep. Ex U). In fact, a separate random outbuy audit showed that another employee in the region, Jay Dean, ordered four tires that could not be located. A police report was filed and Jay Dean resigned during Monro's investigation. (Fazio Dep, pp. 173-74).

Mr. Hunt's Amended Complaint (ECF #27) sets forth claims for breach of contract, failure to pay overtime wages, unjust enrichment, promissory estoppel, federal and state

---

[4] Pursuant to Monro policy, Mr. Hunt would have been placed on administrative leave pending this investigation. However, this was unnecessary because Mr. Hunt was already on an approved medical leave. (*Id.*).
[5] Monro indicates that Brandt would have been fired for theft, however, he had already been fired in June 2017 for sleeping on the job.

disability discrimination, workers' compensation discrimination, and defamation.[6] Monro argues that it properly terminated Mr. Hunt for violating various corporate policies and for allegedly committing theft of Monro property.

II. Standard of Review

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(citing Fed. R. Civ. P. 56(c)). The burden of showing the absence of any genuine issue of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Id.* at 323.

A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

---

[6] Mr. Hunt's original Complaint was filed in the Medina Court of Common Pleas, but was removed to this Court on June 15, 2017 (ECF #1).

The evidence, all facts, and any inferences that may be permissibly drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995)(citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

III. <u>Legal Analysis</u>

1. <u>Breach of Contract</u>

Mr. Hunt admits that he was an at-will employee while he worked for Monro, and was not party to an employment contract with Monro. (Hunt. Dep. at pp. 54-55). Mr. Hunt also testified that he received a copy of Monro's Employee Handbook, which contains a clear disclaimer regarding the at-will employment relationship. (Hunt Dep. Ex O). In Ohio, "either party to an oral employment at-will employment agreement may terminate the relationship at any time, and employee is subject to discharge at any time for any reason not contrary to law." *Allen v. Ethicon, Inc.*, 919 F.Supp. 1093, 1100 (S.D. Ohio 1993). Mr. Hunt understood that he was an at-will employee of Monro's, as he testified "they said that they could get rid of us at any time, if we didn't perform." (Hunt Dep. p. 54). Therefore, there is no genuine dispute that Mr. Hunt was an at-will employee, and Mr. Hunt's breach of contract claim must be dismissed.

2. <u>Overtime Wages</u>

6

Mr. Hunt alleges that Monro failed to pay him approximately $283.50[7] in overtime wages in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 207(a)(1) and R.C. § 4111.03(A). Since R.C. § 4111 *et seq* "expressly incorporates the standards and principles found in the FLSA," and both require an employer to pay time-and-a-half for all overtime (hours worked in excess of forty hours per week), they are interpreted similarly. *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).

In order to prevail, Mr. Hunt must prove that he performed work for which he was not properly compensated by a preponderance of the evidence. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)(quotation omitted). Mr. Hunt is unable to do so. Mr. Hunt worked with a Manager to determine the dates he alleges his time entries were improperly adjusted, but it was determined by Monro's Human Resources department that because of "Hunt's poor timekeeping practices, Monro was unable to confirm whether Hunt was even present in the Service Store during the time that he alleged he was working. Nor was Monro able to locate any invoices, "run shop" time, or tangible evidence that supported Hunt's claim that he was perfomring work for Monro, before or after the time reflected in the modified time entries." (Mullen Aff., ¶ 29). As Mr. Hunt has provided no specific calculations to prove he was not paid overtime wages, Monro is entitled to judgment as a matter of law.

3. <u>Unjust Enrichment</u>

In order to prevail in an unjust enrichment claim, Mr. Hunt must prove that Monro received a benefit from Mr. Hunt, and that retention of that benefit would be unjust. *See Albrechtsen v. Mad River Apts.*, 75 N.E.3d 1047 (Ohio App. 2d. Dist. 2017). Mr. Hunt argues

---

[7] See ECF #62, p. 9.

that Monro failed to pay him approximately $5,498.94 in earned commissions due to alterations to his time entries. (ECF #62). However, as already outlined, there is no evidence presented to show that Monro failed to appropriately and fully compensate Mr. Hunt. Conversely, any evidence of Monro Store Managers reducing Mr. Hunt's time entries were a matter of correcting Mr. Hunt's inaccurate timekeeping entries. Therefore, Mr. Hunt cannot prove that Monro was unjustly enriched, and Monro is entitled to summary judgment.

4. Promissory Estoppel

To establish a claim based upon promissory estoppel in the employment context, "a plaintiff must show that (1) the employer made a clear, unambiguous promise; (2) the plaintiff relied on that promise; (3) the reliance was justifiable; and (4) the reliance caused detriment to the plaintiff." *Kermavner v. Wyla, Inc.*, 250 F.Supp.3d 325, 330 (N.D. Ohio 2017)(citations omitted). Mr. Hunt claims that Monro made him certain promises regarding his wages, overtime and commission income. As previously outlined, Mr. Hunt is unable to prove that Monro failed to fully compensate him during his employment. Therefore, Mr. Hunt's promissory estoppel claim fails as a matter of law.

5. Disability Discrimination

Mr. Hunt alleges disability discrimination under both the Americans with Disabilities Act, 42 U.S.C. § 12112 ("ADA"), and the Ohio Civil Rights Act, § 4112.01 *et seq.* Because the essential elements of an ADA claim and a claim under the Ohio handicap discrimination statute are identical, the analysis of Mr. Hunt's ADA claim also resolves his state claim. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, fn 4 (6th Cir. 2004)(citations omitted).

In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must establish that: "he is an individual with a disability; he is 'otherwise qualified' to

perform the job requirements, with or without reasonable accommodation; and, he suffered an adverse employment action solely by reason of his handicap." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996)(citations omitted).Under the ADA, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

ADA discrimination claims are governed by the *McDonnel Douglas*[8] burden-shifting framework. *See, e.g., Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1105 (6th Cir. 2008). Under this framework, (1) the plaintiff must "establish a prima facie case of discrimination," (2) the defendant must articulate legitimate, non-discriminatory reasons for its actions; and (3) the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination. *Id.*

Mr. Hunt is unable to prove his claim of disability discrimination. First, short-term, temporary restrictions are not generally "substantially limiting" and not considered a disability under the ADA. *See, e.g., Spence v. Donahoe,* 515 Fed.Appx. 561, 569 (6th Cir. 2013). Mr. Hunt was on a temporary medical leave pursuant to a Doctor's orders for seven months due to the injury sustained on April 3, 2017. (See Hunt Dep., Ex. J). Therefore, Mr. Hunt is not considered disabled under the ADA. While Mr. Hunt argues that he was released to "light duty" work on May 1, 2017, there were no "light duty" tasks at Monro for any employees at the Medina Store, and Monro is not required by law to create a new position. *See, e.g., Ells v. Chrysler Group LLC,*

---

[8] *See McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973).

559 Fed.Appx. 512, 513 (6th Cir. 2014). For these reasons, Mr. Hunt's disability discrimination claim fails as a matter of law.

6. Worker's Compensation Discrimination

In order to prevail on a workers' compensation discrimination case under R.C. § 4123.90, Mr. Hunt must prove that (1) he engaged in protected activity, (2) Monro took adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *See Sharp v. Pruitt*, 674 Fed.Appx. 440, 440 (6th Cir. 2016). The causation element requires Mr. Hunt to show by a preponderance of the evidence that his discharge was in retaliation for the worker's compensation claim he filed. *Id.* (citation omitted).

Mr. Hunt has not met his burden of showing a causal connection between the filing of the Worker's Compensation claim and his termination on November 15, 2017. Mr. Hunt was terminated eleven months after filing the claim, at the conclusion of an internal investigation regarding the four missing tires. (See Hunt Dep., Ex U). As already established herein, Monro clearly stated to Mr. Hunt that he was being terminated for his "failure to credibly account for the missing tires." (Mullen Aff., ¶ 25). While Mr. Hunt is not required to present a "smoking gun" to prove retaliation, Mr. Hunt has not satisfied his "burden of offering evidence adequate to create an inference" that Monro terminated him because of the Worker's Compensation claim. *See, e.g., Cunningham v. Steubenville Orthopedics & Sports Medicine, Inc.*, 175 Ohio App.3d 627, 641, 888 N.E.2d 499 (2008). Moreover, Mr. Hunt's argument that the temporal proximity between filing the claim and his termination infers retaliation fails, as even a period of four months has been ruled "too long to support an inference of causation." *See Inwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 550 (6th Cir. 2008)(citation omitted). For these reasons, Mr. Hunt's Worker's Compensation claim fails as a matter of law.

7. Defamation

In order to prevail on a defamation claim, Mr. Hunt must prove that Monro made a "false publication that caused him injury to his reputation, exposed him to public hatred, contempt, ridicule, shame or disgrace." *Miwaldi v. St. Elizabeth Health Center*, 381 F.Supp.2d 675, 688 (N.D.Ohio 2005). As already outlined, Monro's corporate policy was to contact the local police department if merchandise was missing and the employee at issue did not offer a reasonable explanation. Using the evidence within corporate records, Monro provided the Medina Police Department with all relevant information regarding the lost tires, including the order forms signed by Mr. Hunt. Mr. Hunt admits that he accepted delivery of the tires and installed them onto a vehicle, but failed to adequately explain their whereabouts. (Mullen Dec. ¶27). Therefore, Mr. Hunt cannot now argue that this information, provided to the police in the course of a criminal investigation, amounts to false or defamatory statements.

Moreover, absent a showing that Monro acted with 'actual malice," Monro has qualified immunity from defamation claims in making its statements to the police. *See, e.g., Snell v. Village of Bellville*, 2011 WL 5361120 (N.D.Ohio 2011)(*citing Jacobs v. Frank*, 60 Ohio St.3d 111, 116, 573 N.E.2d 609 (1991). For these reasons, Mr. Hunt's defamation claim fails as a matter of law.

IV. Conclusion

For the reasons set forth herein, Monro's Motion for Summary Judgment (ECF #57) is GRANTED.

IT IS SO ORDERED.

*[signature]*
DONALD C. NUGENT
United States District Court

Date: July 11, 2018